**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 15-175-DLB-CJS**

**HILLS DEVELOPERS, INC. and ANABASIS, LLC**                                    **PLAINTIFFS**

**vs.**                      <u>**MEMORANDUM OPINION AND ORDER**</u>

**THE CITY OF FLORENCE, KENTUCKY**                                               **DEFENDANT**

******************

**I.**      **Introduction**

The City of Florence, Kentucky moves to dismiss this 42 U.S.C. § 1983 civil rights action, arguing that Hills Developers, Inc. and its subsidiary, Anabasis, LLC (collectively, "the Developer"), have failed to state claims upon which relief may be granted. Specifically, the City contends that the Developer's due process and equal protection claims are barred by the applicable statute of limitations. In the alternative, the City argues that the procedural and substantive due process claims should be dismissed because the Developer has not demonstrated that it has a legitimate claim of entitlement to the property without an owner-occupied restriction. Moreover, the City insists that the Developer has other remedies available to them. As for the equal protection claim, the City contends that dismissal is appropriate because the Developer has failed to plead a plausible claim. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

1

II.   **Factual and Procedural Background**

The Developer[1] owns an 11.586-acre tract of real property located in the Preston community, which is part of the Plantation Pointe development in Florence, Kentucky. (*Id.* at p. 1-2, ¶ 2-3, 10). In 2007 and 2008, the Developer constructed two multi-unit condominium buildings, both of which are currently owner-occupied, on this parcel of land. (*Id.* at p. 2, ¶ 12-13). Although the Developer initially intended to construct five more multi-unit condominium buildings, the economic recession halted these plans. (*Id.*). The Developer kept the unimproved land and waited for the economy to improve. (*Id.* at p. 2, ¶ 14).

In 2015, the Developer prepared to begin construction on the other five buildings, which were supposed to be identical to the first two buildings in appearance. (*Id.* at p. 2, ¶ 15). While the first two buildings were composed entirely of owner-occupied units, the Developer planned to retain ownership and rent the units in the next five buildings. (*Id.*). However, the property was subject to an owner-occupied restriction. (*Id.*). In 1996, when the City approved the zoning request for the entire Plantation Pointe development, it specifically requested that the prior owner of the property agree to an owner-occupied condition. (*Id.* at p. 5, ¶ 24). The prior owner consented to the restriction. (*Id.*). When the Developer purchased the property from the prior owner, it was aware of the owner-occupied condition. (*Id.*). Thus, in order to proceed with construction, the Developer had to seek removal of the condition by submitting a zoning application for a map amendment

---

1) Plaintiff Hills Developers, Inc. is a "real-estate company specializing in the development, construction, ownership, acquisition, financing, and management of multi-family apartment communities and commercial real estate." (Doc. # 1, p. 1-2, ¶ 2-3, 10). Its subsidiary, Plaintiff Anabasis, LLC, actually owns the tract of land at issue in this case. (*Id.*).

to the City. (*Id.* at p. 4, ¶ 22). On September 8, 2015, the City voted to deny the Developer's request for removal of the owner-occupied condition. (*Id.* at p. 6, ¶ 31).

On October 6, 2015, the Developer filed this civil rights action against the City pursuant to 42 U.S.C. § 1983. (Doc. # 1). Specifically, the Developer asserts the following claims: (1) denial of equal protection based upon the City's failure to apply the owner-occupied condition to other property owners within the same zoning classification as the Developer; (2) denial of substantive due process based upon the deprivation of the Developer's constitutionally protected property and liberty interests; and (3) denial of procedural due process based upon the City's infirm and defective decision-making process. (*Id.* at p. 9-12, ¶ 52-72). The Developer concludes that it has "been injured by the City's official policies, customs, and legislative enactments." (*Id.* at p. 13, ¶ 74). Accordingly, the Developer seeks a declaration that the City's actions violated its constitutional rights and an injunction prohibiting the City from enforcing the owner-occupied condition. (*Id.* at p. 13-14, ¶ 79-88). The City responded by filing the instant Motion to Dismiss (Doc. # 22), which is fully briefed (Docs. # 23 and 24) and ripe for review.

III. **Analysis**

 A. ***Standard of Review***

A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must also contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, the Court "is not bound to accept as true unwarranted factual inferences, or legal conclusions unsupported by well-pleaded facts." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010).

### B. Statute of Limitations

Section 1983, United States Code, Title 42 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

This statute "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations omitted).

Although "Section 1983 provides a federal cause of action . . . in several respects . . . federal law looks to the law of the State in which the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). For example, the length of the statute of limitations "is that which the State provides for personal-injury torts." *Id.* Thus, in Kentucky, § 1983 actions are subject to the one-year statute of limitations set forth in KRS § 413.140(1)(a). *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).

However, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (explaining that the statute of limitations starts running on the accrual date). "Aspects of 1983 which are not governed by reference to state law are governed by federal rules conforming in general

4

to common-law tort principles." *Id.* "Under those principles, it is 'the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotations and citations omitted). "Because an action generally accrues 'when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred,' we typically determine the accrual of a § 1983 action by 'look[ing] to the event that should have alerted the typical lay person to protect his or her rights.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014) (quoting *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (citations omitted)).

In this case, the parties agree that the applicable statute of limitations is one year. However, they cannot agree on the date of accrual for the causes of action. The City argues that the causes of action accrued in 1996, when the owner-occupied condition was first imposed. In the alternative, the City suggests that the date of accrual is the date that the Developer purchased the property. Although the Complaint does not identify the precise date of purchase, it must have been sometime between the imposition of the owner-occupied condition in 1996 and the construction of the Developer's first building in 2006. Because the Developer did not file suit until October 6, 2015, the City concludes that the causes of action are time-barred under either scenario. The Developer insists that the date of accrual is September 8, 2015, the date that the City denied its request to re-zone the property, bringing this action well-within the statute of limitations.

The parties proceed on the assumption that the date of accrual will be the same for all three claims simply because they are all asserted under 42 U.S.C. § 1983. As explained above, § 1983 is simply a vehicle for vindicating federal rights elsewhere conferred. *Oliver*, 510 U.S. at 271. While the same case or controversy can certainly give rise to more than

one constitutional claim, it does not necessarily follow that all of those constitutional claims share the exact same factual predicate. *See, e.g., Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520-522 (6th Cir. 1997) (separately addressing the accrual dates for plaintiff's takings claim, substantive due process claim for deprivation of property, and substantive due process claim for deprivation of liberty under § 1983); *see also Froling v. City of Bloomfield Hills*, No. 12-12464, 2013 WL 2626618, at *5-6 (identifying different accrual dates for substantive due process and equal protection claims under § 1983). Thus, the Court must look to the event that should have alerted the typical lay person to protect his or her rights and determine the date of accrual for each of the Developer's three constitutional claims. *D'Ambrosio*, 747 F.3d at 384.

### 1. Substantive Due Process Claim

In outlining its substantive due process claim, the Developer essentially argues that the City's imposition of the owner-occupied condition has deprived it of constitutionally protected liberty and property interests[2] in developing, improving, and renting this tract of land.[3] (Doc. # 1 at 9-11). Although the owner-occupied condition was first imposed in 1996, the Court cannot conclude that the cause of action accrued at that time because the Developer did not own the property. Thus, the Developer did not have a complete and

---

2) The Developer makes no attempt to distinguish between the property interests and liberty interests at issue here. *See Kunhle Bros.*, 103 F.3d at 520-22 (discussing a substantive due process claim for deprivation of property, based on a reduction in the property's value following the enactment of a county resolution, as well as a substantive due process claim for deprivation of liberty, predicated on the owner's restricted right to intrastate travel). Because the liberty and property interests seem to overlap in this instance, in that they both focus on the Developer's ability to develop this tract of land, the Court will consider them as one.

3) The Court recognizes that this case seems to implicate some Takings Clause issues. After all, the Developer essentially asserts that the City's imposition of the owner-occupied condition has prohibited it from developing the property in a financially lucrative manner. However, the Court will not address any Takings Clause issues because the Developer has explicitly disclaimed an intent to plead such a claim. (Doc. # 23).

present cause of action in 1996. If this Court were to accept the City's position and hold that the Developer's cause of action accrued in 1996, it would effectively impose a rule permitting unconstitutional conditions to exist indefinitely. Many landowners would be unable to challenge property restrictions imposed on their property, simply because the statute of limitations began running prior to their purchase of it. The law does not require such a result. *See Kunhle Bros.*, 103 F.3d at 522 ("[T]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations.") (quoting *Virginia Hosp. Ass'n v. Baliles*, 868 F.2d 653, 663 (4th Cir. 1989)).

In *Herr v. United States Forest Service*, the Sixth Circuit encountered a factual scenario similar to that at issue here. *See* 803 F.3d 809 (6th Cir. 2015). The plaintiffs sought to enjoin the enforcement of a forestry regulation, which prohibited them from using their gas-powered boat on the lake adjoining their property. *Id.* at 812-13. Although the U.S. Forest Service had imposed the restriction before the plaintiffs purchased the property, it did not begin enforcing it until two years after the plaintiffs' purchase. *Id.* Once enforcement efforts began in earnest, the couple brought suit against the U.S. Forest Service under the Administrative Procedure Act ("APA"). *Id.*

The Sixth Circuit noted that the limitations period under the APA "begins to run when a party's right of action first accrues–as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court." *Id.* at 818 (internal quotations omitted). It further observed that "[t]his comports with the general rule that a statute of limitations begins to run . . . when the plaintiff can file suit and obtain relief for the injury upon which [his] action is based." *Id.* (internal quotations omitted). Although the U.S. Forest Service's regulation became final in 2007, the Sixth Circuit held that the plaintiffs

7

became aggrieved by the regulation when they purchased the property in 2010. *Id.* at 819. Thus, it concluded that the cause of action accrued, and the statute of limitations started running, in 2010. *Id.*

The Court recognizes that the APA differs from § 1983 in many respects. However, it finds the *Herr* case instructive because it faced the same question that is currently before this Court: At what point are the plaintiffs able to institute and maintain a suit challenging the constitutionality of a restriction on their property? Applying *Herr*'s logic to the facts of this case, the answer is the date that the Developer purchased the property. Although the Complaint does not specifically identify this date, it indicates that the purchase occurred sometime between 1996 and 2006.

The Developer insists that the cause of action did not accrue on the date of acquisition. Rather, it argues that the cause of action accrued on September 8, 2015, the date that the City denied the re-zoning application. If the Court were to accept this argument, it would effectively render the statute of limitations meaningless. An owner who acquires property, knowing that there are restrictions on it, would be permitted to sue whenever he has a change of heart about his plans for the property. Even if the owner acquires the property, knowing that there are restrictions on it, a cause of action would not accrue until the property owner decides that he is dissatisfied with those conditions. This cannot be the correct result. As the Sixth Circuit has observed, "[s]tatutes of limitations serve two purposes: requiring plaintiffs to bring claims before evidence is likely to have grown stale; and allowing potential defendants repose when they have not been put on notice to defend within a specified period of time." *Kunhle Bros.*, 103 F.3d at 522. "To allow damages for the entire period during which a law is in effect when a plaintiff

challenges the law long after it was enacted would frustrate both of these purposes." *Id.*

For these reasons, the Court concludes that the Developer's cause of action accrued when it purchased the property between 1996 and 2006. Even assuming that the Developer purchased the property at the end of this time period, its claim falls well outside the one year statute of limitations period. Accordingly, the Developer's § 1983 claim for deprivation of substantive due process must be dismissed as time-barred.

### 2. Procedural Due Process Claim

The Developer's procedural due process claim is somewhat perplexing. In making its arguments about the statute of limitations, it references the denial of the re-zoning application several times. However, its procedural due process claim seems to focus on the procedures used to impose the condition.[4] Specifically, the Developer asserts that, "[b]y applying the Owner Occupied Condition and the Unconstitutional Conditions Policy to Plaintiffs, the City has acted arbitrarily and unlawfully through an invalid and unfair procedure and with an infirm and defective decision-making process thereby depriving Plaintiffs of procedural due process of law." (Doc. # 1 at 12).

Because the Developer seems to complain about the City's application of the restriction to its use of the property,[5] the Court concludes that it had a complete and present cause of action when it acquired the property. Thus, because the Developer's claim accrued sometime between 1996 and 2006, its procedural due process claim must

---

4) Similarly, the Developer states that it is mounting a facial attack on the condition, but pleads an as-applied challenge. (Doc. # 1 at 12).

5) This conclusion is bolstered by the Developer's Response to the Motion to Dismiss, wherein it states that its "injury stems from an established procedure that was facially invalid because of the Owner Occupied Condition and the Unconstitutional Conditions Policy." (Doc. # 23 at 16).

also be dismissed as time-barred by the applicable statute of limitations.

### 3.     Equal Protection Claim

Finally, the Developer contends that the City has violated its equal protection rights by treating it differently than all other property owners within the same zoning classification. (Doc. # 1 at 9-10).  Because the Developer presents no time line for the City's alleged conduct, it is impossible to tell whether this claim is time-barred.  However, the Court does not need to engage in this inquiry because the Developer presents no facts to support this claim.  It fails to explain when or how the City has treated it differently than other property owners within the same zoning classification.  Instead, it has simply asserted the kind of "the defendant-harmed-me" allegations that are insufficient under *Twombly* and *Iqbal*. Accordingly, the Developer's equal protection claim must also be dismissed.

### 4.     Other Claims

The Developer asserts a claim for "illegal official policy" under § 1983.  (Doc. # 1 at 13).  Although styled as a separate claim, Count 4 essentially states that the constitutional violations set forth in Counts 1 through 3 "constitute illegal official policies, practices, and legislative enactments of the City." (*Id.*).  Such a finding is required in order to hold a city liable under § 1983.  *See Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978).  Because Counts 1 through 3 have been dismissed, Count 4 must also be dismissed.

The same can be said of Counts 5 and 6, which request declaratory and injunctive relief from the alleged constitutional violations.  Because the Developer's constitutional claims have been dismissed as time-barred, it is not entitled to either form of relief.  *See Intl Ass'n of Machinists and Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997) ("A request for declaratory relief is barred to the same extent that the claim

for substantive relief on which it is based would be barred.").

**IV.   Conclusion**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)   Defendant's Motion to Dismiss (Doc. # 22) be, and is, hereby **GRANTED IN FULL**;

(2)   Plaintiffs' Complaint (Doc. # 1) be, and is, hereby **DISMISSED**; and

(3)   This action be, and is, hereby **STRICKEN** from the Court's active docket.

This 18th day of August, 2016.



Signed By:
David L. Bunning
United States District Judge

11

K:\DATA\Opinions\Covington\2015\15-175 MOO re MTDs.wpd